THE MUNICIPALITY OF MAYAGÜEZ v. GÓMEZ ET AL.

APPEAL from the District Court of Mayagüez. .

No. 295.—Decided October 22, 1909.

REDEMPTION OF PROPERTY SOLD FOR TAXES—MUNICIPALITIES—LEGAL ENTITIES.—
Municipalities, as legal entities, are unchangeable so long as the organic law creating them and establishing and regulating their authority continues in existence. The natural persons constituting them may change, but the legal entity remains the same, with all the rights and duties conferred and imposed by law.

ID.—DILIGENCE ON THE PART OF REDEEMER.—In the case at bar the court considers that the municipality of Mayagüez has not shown due diligence in attempting to redeem the property sold for taxes.

ID.—FRAUD—CONSPIRACY.—The conclusions of the trial judge, in regard to the existence of fraud and a conspiracy between the defendants, are erroneous because fraud cannot be presumed, and in this case it has not been proven; and the contention as to the existence of a conspiracy is without any foundation.

ID.—RIGHT OF REDEMPTION—WHO MAY EXERCISE THE SAME.—In accordance with the provisions of section 348 of the Political Code, the only person who may redeem property sold for taxes is the owner thereof, or his heirs, assigns, or duly authorized agents.

ID.—INTERPRETACION OF TERM "OWNER."—The meaning of the word "owner," according to article 354 of the Civil Code, excludes every natural or legal person who does not possess the right to enjoy and dispose of the things owned without any limitation other than those established by law.

ID.—HOLDER OF CENSO.—In accordance with the foregoing doctrine, the owner of a *censo* has no right to redeem property sold for taxes.

ID.—CONSIGNATION OF AMOUNT AFTER EXPIRATION OF REDEMPTION PERIOD.—Although under a liberal interpretation the municipality of Mayagüez is deemed to be the owner of the property because of the fact that it holds a *censo* which encumbers the same, it was guilty of evident and gross laches and finally deposited the amount necessary for the redemption in the registry of property, after its right so to do had terminated by reason of the expiration of the period of ninety days mentioned in section 348 of the Political Code.

ID.—NULLITY OF ASSIGNMENT OF RIGHT OF REDEMPTION—ERRONEOUS JUDGMENT.—In this case the error was committed in the judgment of declaring the deed of assignment of the right of redemption to be null and void without having sued the assignee, and therefore without his having had his day in court.

ID.—EFFECT OF CERTIFICATE OF SALE—CANCELLATION OF TRANSFERRABLE PERPETUAL CENSO.—In accordance with the provisions of section 315 of the Political Code and article 125 of the Mortgage Law, a sale at public auction for taxes on the property encumbered by a transferrable perpetual *censo* carries with it the cancellation of the encumbrance, and the party acquiring the same at public sale has a right to have the certificate of sale recorded free from encumbrances.

The facts are stated in the opinion.

*Mr. José de Guzmán Benítez* for appellant.

*Messrs. Domínguez and Travieso* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

This is an amended complaint filed by Attorney Jorge V. Domínguez on behalf of the municipality of Mayagüez, represented by its *alcalde,* Alberto Bravo, against Emilio Gómez and Manuel Rodríguez Cabrero in which it is alleged:

"First. That according to the public deed of November 18, 1868, executed by José Antonio and Francisco Annoni, in this city of Mayagüez, the municipality of Mayagüez is the owner of a perpetual transferable annuity, established on an estate which has belonged, up to this date, to the defendant, Emilio Gómez, situated in *barrio* Río Cañas Arriba, in this judicial district.

"Second. That said annuity is duly recorded in the Registry of Property of Mayagüez.

"Third. That said annuity is for the sum of 15,760 *pesos,* in money current at that time, equivalent to $9,456, United States currency.

"Fourth. That Emilio Gómez having wilfully and maliciously failed to pay the taxes assessed on said estate it was sold by public auction on January 16, 1907, for the purpose of recovering payment thereof. Said sale was caused by the bad faith of Gómez, who in this way endeavored to defraud the interests of the Hospital of San An-

tonio of this city, the beneficiary under said annuity, in whose favor the said annuity had been established, and whose representative is the plaintiff Municipality.

"Fifth. In order to carry out this fraudulent plan, said Gómez conspired with the other defendant, Manuel Rodríguez Cabrero, and agreed to buy the estate, a perfect understanding existing between them. And as a matter of fact said defendant, Rodríguez Cabrero, did purchase at public auction on· January 16, 1907, for the benefit of said defendant, Gómez, and with the intention of defrauding the plaintiff of its said annuity, the estate above described encumbered thereby.

"Sixth. And the plaintiff corporation specifically alleges that owing to the manner in which it is now constituted its municipal council was not to take possession until January 14, 1907—that is, two days before that set for the sale, which was attended by the *alcalde* thereof—but it was impossible to prevent the sale notwithstanding a telegram from the Treasurer ordering that it be suspended until further notice.

"Seventh. And the plaintiff corporation also specifically alleges that it did not have any information that such sale was to take place, for which it was impossible to raise sufficient funds in so short a time, and which could not be suspended in order to recover from Gómez the amount of taxes due subsequently thereto, in order to save the credit in favor of the aforesaid hospital.

"Eighth. Nevertheless, the *alcade* representing the plaintiff corporation, duly authorized by municipal ordinance of January 15, 1907, proceeded to redeem said estate encumbered by the aforementioned annuity and to this end on May, 24, 1907, deposited the amount of the sale, the defendant, Rodríguez Cabrero, not being found after a diligent search, he having concealed himself, and obtained from said Registrar of Property of Mayagüez a certificate dated May 24, 1907, showing the redemption of said estate at the instance of the municipality, for the benefit of said Gómez.

"Ninth. In the meantime, although Mr. Gómez had been called upon to do so, he did nothing to redeem the estate in favor of the municipality, notwithstanding the latter had offered him the price of the redemption, but, on the contrary, the said Gómez fraudulently and in pursuance of his aforesaid plan with the defendant, Rodríguez Cabrero, assigned his right of redemption to one, José Angel Franco in order to make the redemption on his part impossible and thus evade the rights of the municipality. And this assignment was malicious and fraudulent, and purely simulated.

"Tenth. Manuel Rodríguez Cabero having presented a petition to the registrar of this city to consummate the sale at auction in his favor, the registrar refused to do so, and from his decision Rodríguez took an appeal which was decided by the Supreme Court ordering that said sale be consummated. This appeal was taken for the use and benefit of Gómez, the other defendant, and for the sole purpose of evading and defrauding the interests of the municipality and its hospital. At the request of Emilio Gómez a petition was presented to the registrar of this city to consummate the sale at auction in his and on Gómez's initiative and voluntary action, the latter appeared before Notary V. P. Martínez, of this city, on July 12 of this year, and accompanied by his wife, waived the right of redemption consummated at the instance of the municipality, in order to permit the record in favor of Rodríguez Cabrero. This waiver is specifically alleged by the plaintiff corporation as fraudulent, malicious and made in bad faith for the purpose of defrauding the municipality, and is void and had no legal effect whatsoever.

"Eleventh. Under date of July 16, 1907, the registrar canceled the record in favor of Emilio Gómez on the strength of the deed of waiver personally presented by him and entered a memorandum of the consummation in favor of the defendant Rodríguez, and also canceled the perpetual transferable annuity in favor of the hospital of San Antonio, belonging to this municipality.

"For all of which reasons it prays that final judgment be rendered as follows:

"(a) Recognizing the perpetual transferable annuity in favor of the hospital of this city called "Asilo de San Antonio," constituted on the estate which is described in the deed mentioned in the first allegation of fact of the complaint.

"(b) Declaring void and of no legal effect whatsoever the deed of July 12, 1907, executed by Emilio Gómez and his wife, before Notary Victor P. Martínez, in which the redemption of the estate made in his favor in waived and its cancellation authorized.

"(c) Declaring void and of no legal effect whatsoever the record of cancellation of the encumbrance in favor of the San Antonio Hospital."

The summons having been served on the said defendants, Emilio Gómez, one of the defendants, did not make answer, for which reason entry of default having been applied for by the plaintiff, such default was duly entered by the secretary.

The other defendant, Manuel Rodríguez Cabrero, made answer within the legal period, specifically denying some of the facts of the complaint and admitting others, and alleging, furthermore, new facts in opposition thereto. The answer was also amended in some particulars.

The action having been placed on the calendar and a day set for the hearing, it was had with the attendance of counsel for the parties, who read their briefs and presented their evidence, consisting of documentary evidence and the testimony of witnesses, which was heard at the trial, said counsel thereafter making their argument in their order to the court, which declared the proceedings closed for judgment, the same being reserved.

On April 11, 1908, this cause was called for trial, the plaintiff appearing through its attorney, Jorge V. Domínguez, and the defendant, Manuel Rodríguez Cabrero, through his counsel, Alfredo Arnaldo y Sevilla, but the other defendant failed to appear, for which reason his default was entered. The court, after having heard the pleadings, the evidence and the oral arguments of counsel for the parties present, reserved its decision until April 28, 1908, and then rendered judgment in favor of the plaintiff municipality and against the defendants, and consequently the redemption of the San Antonio Hospital made by the *alcalde* of Mayagüez, Alberto Bravo, as legal representative of the municipality of this city, was held to be valid, as well as the certificate of redemption issued by the registrar of property and the consequent record of the estate in favor of its owner, Emilio Gómez.

Second. The following were held to be null and void:

" (a) The deed of assignment of the right of redemption, executed by Emilio Gómez and his wife, Clotilde C. de Gómez, in favor of Angel Franco, dated February 9, 1907, because it had been made in fraud of the San Antonio Hospital, the creditor and annuitant.

" (b) The record of the consummation of the sale made in the books of the registry in favor of Manuel Rodríguez Cabrero.

"(c) The record of the cancellation of the perpetual transferable annuity and of all the charges and liens on the estate sold.

"(d) The cancellation of the certificate of redemption and of the record of redemption made in favor of Emilio Gómez.

"(e) The deed of cancellation executed by Emilio Gómez and his wife, Clotilde C. de Gómez, before Notary Victor P. Martínez, dated July 12, 1907, providing that the sum due, the deposit of which was made as the price of the redemption, amounting to the sum of $1,370, remain at the free disposition of the purchaser, Manuel Rodríguez Cabrero, who shall be under the obligation to receive said sum and execute within five days the proper public deed of transfer or sale of said estate to the original owner of the same, Emilio Gómez. The costs are taxed against the defendants, Manuel Rodríguez Cabrero and Emilio Gómez and it is ordered that upon this judgment becoming final, the proper mandates issue in duplicate to the registrar of property and marshal of the district, in order to secure the effectiveness thereof, and that this judgment be entered in the judgment book of this court."

The defendant, Manuel Rodríguez Cabrero, took an appeal from said judgment to this Supreme Court and he appeared here and presented a statement of facts approved by the trial judge, the matter being discussed at the public hearing by counsel for the parties, at which hearing they made their respective arguments.

Now then, the trial judge asserts that in considering the evidence presented at the trial by both contending parties, the following should be set down as the proved facts resulting from an examination and analysis of the evidence:

(a) That Emilio Gómez was the only and legitimate owner of a rural estate called Nuestra Senora de la Trapa, planted in coffee, and having pasture and uncleared lands situated in barrio Las Furnias, now Río Cañas Arriba, in the municipal district of the town of Las Marías, consisting of 400 cuerdas, bounded on the north by the Estate Retiro belonging to Falbe & Co.; on the south by the property belonging to Pedro José Agostini; on the southeast, by the property of Successors of P. Nieva & Co., and the Estate Buena Vista; on the east by

other property of Nieva and Falbe & Co., and María Bruguran; and on the west by property of Agostini Hermanos.

(*b*) That this estate is the same which is described in the body of the complaint to which reference is made in the public deed executed on November 18, 1868, by José Antonio and Francisco Annoni, of Mayagüez.

(*c*) That the rural estate described is subject to a number of charges and liens, with preference assigned to a voluntary mortgage constituted to secure a principal of 15,760 *pesos,* imposed under a perpetual transferable annuity and the annual income of five per cent in favor of the hospital of this city called "Asilo de San Antonio," which income was to be devoted exclusively to the support of the sick of the said hospital, such annuity being redeemable at will, either in whole or in part, upon payment of the amount thereof to the person, board or corporation entitled to receive it, which annuity and mortgage was duly recorded in the books of the registry of property of this city.

(*d*) That under date of January 16, 1907, said estate was offered at public auction in the town of Las Marías, for the purpose of recovering taxes due and unpaid by Emilio Gómez, owner of said estate, amounting to the sum of $1,292.86, and no other bidder having appeared, it was awarded in sale to the defendant, Manuel Rodríguez Cabrero, for the said sum of $1,292.86, the proper certificate of sale being made on the same date in his favor by the deputy collector of revenues of said city, subject to redemption during 90 days as established by law, in favor of the said owner of the property sold, his heirs, or duly authorized assigns, under section 348 of the Political Code in force at the time the sale was held.

(*e*) That said certificate of sale was presented to the registrar of property of this city on February 8, 1907, and the proper record of the presentation was made, and under date of April 17 of the same year, at 8.30 a. m., it was again presented to the registrar for the proper record of the consummation of the sale, which was denied by the registrar.

(*f*) That on said April 17, 1907, at 3.30 p. m., the *alcalde* of this city, Alberto Bravo, now the plaintiff, in the name of the municipality and the San Antonio Hospital, deposited in the office of the said registry, José E. Benedicto, for the purpose of redeeming the said property sold, the sum of $1,370 as the amount of the price of the sale, interest and costs, whereupon the registrar proceeded to record the estate in the name of Emilio Gómez and issued the proper certificate of redemption.

(*g*) That Manuel Rodríguez Cabrero, not acquiesing in the decision denying the consummation, took an appeal to the Supreme Court of this Island and said court having reversed the decision of the registrar, the latter proceeded to enter the record of the consummation of the sale in favor of the purchaser, Rodríguez Cabrero, cancelling, moreover, all the charges and liens on the estate, including the perpetual transferable annuity in favor of the hospital called "Asilo de San Antonio."

(*h*) It has been further established that the sale by public auction having been previously announced to take place on January 16, 1907, and the persons who constituted it (the municipal council?) having taken possession of their offices on the 14th of said month, said body could not adopt any resolution valid in law until 24 hours after its constitution—that is to say, on the 15th at eight p. m.; that said municipality did not have any knowledge of the sale until the 14th, when it was inducted into office, from the reports made by the outgoing *alcalde,* José Menéndez, and under such circumstances, nevertheless, its *alcalde,* Alberto Bravo, having been previously authorized therefor by the municipal corporation, went the morning of the following day, the 16th, to the town of Las Marías to watch over the sale, which he was unable to do because the sale had already been held, despite the fact that the said *alcalde* had requested and obtained from the Treasury Department the suspension of said sale, the order for which does not appear to have arrived in time. It is likewise estab-

lished that the said *alcalde,* acting under the same representation, had long before the expiration of the 90 days prescribed for the legal redemption, offered the owner of the property sold, Emilio Gómez, the price of the sale with interest and costs, which was not accepted by said owner, there being no apparent reasonable ground for his refusal, and not only did he refuse to accept the price offered, but, breaking the formal written agreement he had entered into with said *alcalde,* whereby he engaged to do all that lay in his power in favor, and to aid the interests, of the municipality, he assigned and conveyed his right of redemption as owner of the estate to Angel Franco, a resident of the town of San Sebastián, without notifying the *alcalde,* Alberto Bravo, about the assignment he intended to make, thus violating the obligation he had contracted with the municipality; that the assignee, Angel Franco, failed to redeem the estate, the reason for his failure to do so not appearing, although he had then and there paid the assignor for the assignment of such right the sum of $500; that intimate friendship existed between Emilio Gómez, Angel Franco and Manuel Rodríguez, the two latter being relatives by affinity; that in view of the refusal of Emilio Gómez, the owner of the estate, to accept the price of the sale, the *alcalde,* acting as stated, after the assignment had been made, sought to redeem the estate by other means, and to this end he went with some other persons to the place of residence of the purchaser of the estate, Manuel Rodríguez Cabrero, who did business in the town of San Sebastián and repaired to his commercial establishment some hours before the expiration of the period of redemption; he was not found there nor any person representing him, his whereabouts at that time being unknown, all of which the persons interested lay before the judge of said town and then continued their investigations in Añasco and Mayagüez without result, Rodríguez Cabrero not being found in either of these places, nor has he shown where he was at that time; that subsequently the said Rodríguez was found at the house of Agustín Rosello, a resident of this city, where

he was personally visited by the *alcalde,* who offered him the price of the public sale, with interest and costs, and he refused to receive it, alleging that the term for the redemption had already expired, whereupon the said *alcalde* deposited the said sum in the registry of property; and, finally, that Emilio Gómez had acted as the parol agent of Manuel Rodríguez Cabrero, by personally applying at the registry of property for the consummation of the sale in favor of said purchaser, with the same interest he would have shown in his own affairs, and had given his consent, accompanied by his wife, for the cancellation of the record of his right in the registry in order that the ownership of the estate sold might be definitely consolidated in favor of Rodríguez Cabrero.

From the complaint and the answer and the facts which he holds to have been established, the trial judge, deduces some consequences which it is advisable to consider first.

It is stated as a fact that the municipality of Mayagüez had acted with the proper diligence to prevent the sale of the estate of Emilio Gómez, but we do not find that this belief has in any manner been established.

On the contrary, the proceedings reveal a certain lack of activity on the part of the municipality which is a body corporate and as such invariable, as long as the organic law which gave it life and regulated its power exists. The natural persons constituting it may change, but the entity is maintained with all the rights and duties which the laws impose upon it and one of them is undoubtedly to see to it, like good administrators, that the interests of the community are preserved.

If the rights and duties of that juridical entity, the municipality, should vary merely by a change of the persons composing it, then no administration would be possible nor could there be any confidence in the acts which it might perform within the district under its jurisdiction.

The appellant cites in support of this doctrine a paragraph to be found in Andrews American Law, sec. 222, p. 266.

We believe this authorized opinion to be sound and wise, and, therefore, acceptable.

And if this be so, we repeat that the municipality of Mayagüez was negligent.

The *alcalde* of the former *ayuntamieneo*, Menéndez, knew that the estate was about to be sold to the highest bidder, for non-payment of outstanding taxes. We cannot determine since what date he knew of it, but there is an indication in the testimony of Cabrero that he attended the first auction at which there were no bidders and it is a matter of record that said Menéndez, the outgoing *alcalde,* advised the incoming *alcalde* that two days after the expiration of his term the second sale was to be held .

So then we find that neither Menéndez, the *alcalde,* nor the municipal council of which he formed part, did absolutely anything to protect the credit which it is now sought to defend by means of these proceedings.

This sorrowful inheritance was left to the municipal council presided over by Vicenté Pagan, and of which the said Alberto Bravo was the *alcalde.*

Said *alcalde* arrives rather late at the auction, but goes there without any money to redeem the estate subject to an annuity in favor of the San Antonio Hospital. So that, even if he had arrived in time in the town of Las Marías, where the sale was held, he would not have been able to do anything on account of a lack of funds, notwithstanding the fact that Vicente Pagan says at folio 54 "that the municipality had funds which it could apply to this redemption, because they secured them at once from the bank." And between the notice of the sale and the holding thereof, two days intervened.

The first ostensible step on the part of the municipality of Mayagüez for the purpose of redeeming the estate sold, appears on January 29, 1907—that is to say, no less than 13 days after the award of the estate to Rodríguez Cabrero, which occurred on January 16, 1907.

This act is set forth in a private document signed by Emilio Gómez, owner of the estate sold, wherein he is asked if he was willing to redeem the estate, his reply being that he was, provided the municipality accepted the propositions he would make in writing. But throughout this document no sum of money whatsoever is offered Gómez, when he himself says that he had not redeemed the estate because he did not have the means wherewith to do it.

In this document, folios 12 and 13, Gómez is required to be favorably disposed toward the municipality, but no compensation whatsoever is offered him, nor is the amount placed at his disposition which is strictly necessary to return to Rodríguez Cabrero the sum he had paid for the estate in question. This document in itself could not obligate Gómez in any way nor does its context reveal the will of the municipality to redeem, in the proper manner, the property subject to a credit in favor of the San Antonio Hospital.

Subsequently a committee of the *ayuntamiento* of Mayagüez goes to San Sebastián some *hours before the expiration of the term* for the redemption, to look for Manuel Rodríguez Cabrero and they do not find him in his store nor in the streets of the town, but fail to look for him in his private dwelling, and the fact of their not having found him is made the subject of a record drawn before the judge.

Then they look for him in Añasco and Mayagüez and do not find him either. The complaint alleges that he concealed himself for the purpose in due time to evade the requisition and notice. Rodríguez Cabrero denies it, and as this matter has not been proved, no consequence in favor of the municipality of Mayagüez can be derived therefrom.

There are, moreover, vacillations and doubts in the acts of the municipal entity. The *alcalde* says that he offered Emilio Gómez the amount of the sale with interest and costs after the sale, and that he refused it, the municipality recognized then that the only one who had the right to redeem was the owner of the estate, but later on the municipality thought

it had the right to make such redemption, and then a few hours before the expiration, it hurriedly turns to the purchaser, Rodríguez Cabrero.

Perhaps these doubts as to its rights contributed to the lamentable loss of time on the part of the municipality.

Certain it is that either for this or any other cause, it has not displayed all that due diligence which was necessary for the redemption of the estate sold under hammer.

The fact that Emilio Gómez later assigned his right of redemption to José Angel Franco for $500 which the latter paid and then did nothing, the fact that Emilio Gómez appeared at the registry on behalf of Rodríguez Cabrero after this Supreme Court had ordered the consummation of the sale in his favor, the fact that Gómez, Franco and Rodríguez were friends, and the last two relatives, the fact that Gómez consented by public deed to the cancellation of the record of his right in the registry, when the sale in favor of Cabrero had already been ordered consummated. These facts, whether taken together or separately, can in no way establish "a secret understanding or conspiracy, prepared in advance and carried out under the concealed form of the law for the purpose of defrauding the rights of the San Antonio Hospital, and in order to favor Rodríguez Cabrero," as the trial judge asserts.

"For the purpose of defrauding rights," it is stated, but fraud is not presumed; it must be proved, and here it has not been proved.

We cannot see any secret conspiracy when the rights are exercised under the protection of the law.

Account must be taken of the fact that Rodríguez Cabrero is not here a stranger nor a crook, so to speak; he is a man representing a mortgage credit of fourteen or fifteen thousand *pesos* encumbering the estate he bought at auction which credit belongs to a lady residing in the island of Cuba. Rodríguez Cabrero was defending these interests and displayed more activity and diligence than the municipality of Maya-

güez, by attending the first and the second auction and carrying with him the money necessary for the purchase of the estate.

What influence could friendship, relationship or the acts of Franco and Gómez have exerted on him when he had the strong inducement of working for his right?

Without that friendship, without that relationship, without those acts, did not the obligation always exist of defending the mortgage credit which he represented?

Where is the proof of the fraudulent agreement entered into by those persons to prejudice the rights of the San Antonio Hospital, represented by the municipality of Mayagüez? Nowhere.

Some of these acts of Gómez were not necessary bacause the consummation of the sale in favor of Rodríguez Cabrero had already been ordered, and consequently when he performed said acts, they could no longer prejudice anyone.

It is true that Franco purchased the right of redemption and did nothing thereafter. He could have done so and he did it, but Cabrero did not count upon this at all because he had bought the estate independently, and only on such a title has he based his right in the registry of property and in the courts of justice. Where then, is the alleged conspiracy to defraud, when the acts of Franco and Gómez do not in the slightest manner benefit Rodríguez Cabrero?

We will admit that he took advantage of favorable circumstances, and nothing more.

Let us now leave the findings of the trial judge upon questions of fact and enter upon the questions of law to be settled on this appeal, namely:

First. Has the municipality of Mayagüez, as annuitant, the right to redeem the estate awarded at public sale to Manuel Rodríguez Cabrero, for the payment of taxes due the Insular Treasury by the owner thereof, Emilio Gómez?

Second. If it has such a right, was the deposit made in the registry of property by the municipality of Mayagüez for the

redemption of the estate within or without the term prescribed by law?

These are the points to be discussed and decided.

The parties acknowledge this and agree as to the law to be applied.

The law of internal revenue, included in the Political Code approved March 1, 1902, provides as follows:

"Section 348.—The owner of any real property sold for taxes, his heirs or assigns, or duly authorized agents, *may redeem* the same within 90 days of the issue of the certificate of purchase."

So then, according to this statute, the municipality of Mayagüez cannot redeem the property because it is neither the owner thereof nor is it his heir or assign, nor has it been authorized by such owner for the purpose.

In order to show the affirmative—that is to say, that the municipality of Mayagüez, as the annuitant, may redeem the property sold at public auction for the payment of taxes in arrears—the judge of Mayagüez and counsel for the respondent in his brief filed in this Supreme Court, cite a number of American authorities and decisions of different courts of justice tending to show that "the word 'owner' is a generic term which embraces the different kinds of right or interest which may be derived from a title of ownership, at least with respect to the right of redemption and that a law which gives the owner the right of redemption gives it also to the possessor of an encumbrance upon the property, or mortgage creditor."

In which case they allege that the municipality of Mayagüez is comprised.

Let us see what the Supreme Court of the United States says:

"We think it was the intention of Congress in the Porto Rican act to require the district court exercising the jurisdiction of a Circuit Court, in analogy to the powers of the Circuit Courts in the States, 'to adapt themselves, save in the excepted cases in equity and admi-

rality, to the local procedure and practice in Porto Rico. This conclusion is in accord with the policy of the United States, evidenced in its legislation concerning the islands ceded by Spain, and secures to the people thereof a continuation of the laws and methods of practice and administration familiar to them which are to be controlling until changed by law." (*Pérez* v. *Fernández,* 202 U. S., 97.)

"In establishing a civil government for Porto Rico, Congress, scrupulously regarding the local institutions and laws, by section 33 of the Act of April 12, 1900, preserved the local courts, both original and appellate, and recognized their power and authority to deal generally with all matters of local concern." (*Gargot* v. *De Rubio,* 209 U. S., 302.)

All the laws and principles for the protection of the right of property in Porto Rico have been careful to define and classify ownership in such manner as to leave no doubt of any kind.

Section 354 of the Civil Code provides:

"Ownership is the right by which a thing belongs to some one in particular to the exclusion of all other persons.

"Ownership confers the right to enjoy and dispose of things without further limitations than those established by law.

"The owner holds a right of action against the holder and the possessor of the thing in order to recover it."

So then, in this case, the owner of the property sold being Emilio Gómez he was the only one who could redeem it, and his capacity as such owner excluded that of all other natural or artificial persons, such as the municipality of Mayagüez.

Hence, according to our laws in force—that is, the law of internal revenue and the Civil Code cited—it appears that the owner alone can make the redemption, and the meaning of owner has also been explained and is found not to apply to the municipal council of the above-mentioned city.

The trial judge, fearing for the success of his interpretation of the word "owner," namely, that it includes any cred-

itor holding a lien on the estate sold, recurs to section 1078 of the Revised Civil Code which reads as follows:

"Creditors after having attached the property of which the debtor may be in possession, in order to collect all that is due them, may exercise those inherent in his person; they may also impugn the acts which the debtor may have performed in fraud of their right."

But the foregoing provision would never be applicable to this case.

It is not a question here of collecting any credit by the municipality of Mayagüez from Emilio Gómez, nor has it been shown that the acts of the latter have been performed in fraud of said creditor, namely, the municipality of Mayagüez.

Emilio Gómez did not wilfully and maliciously permit his estate to be sold at auction; he declares he could no longer attend to it; that he did not have the money to cultivate it and pay taxes, and this must be believed in the absence of proof to the contrary.

How many owners have met with the same misfortune as Gómez! No consequences can be deduced from the acts which are not proved in the course of so full a debate as has taken place in this litigation.

Now the trial judge considers section 349 of the Political Code which is undoubtedly related to section 348 of said Code.

Section 349 reads as follows:

"If the aforesaid purchaser, his heirs or assigns, refuse to accept the tender of redemption money so made the person so tendering the same shall repeat the tender in the presence of at least two witnesses, and if the tender be again refused, the said person and witnesses shall make oath before the registrar of property who recorded the certificate of attachment, that due tender of the lawful amount of redemption money has been made and refused."

It is alleged that this statute is based on the assumption that the purchaser be found, but in no respect where he intentionally and maliciously conceals himself or goes away from

the Island without leaving any person to represent him legitimately; and it is added that no one is obliged to do what is impossible, and that a sound construction warrants the conclusion that in this case the requisites prescribed by law have been complied with, because no general law has been enacted for the protection of bad faith or malice, or of any fault or negligence or accident unforseen by such law.

But we cannot understand how conclusions can be reached without any data or antecedents whatsoever justifying them.

There is nothing which reveals that the purchaser, Manuel Rodríguez Cabrero, had intentionally and maliciously concealed himself to evade the tender of the money. This we have already said.

If he had been looked for since January 16, 1907, the date of the certificate of sale in favor of Cabrero, with the firm purpose of complying with the requisites of section 349 of the Political Code, he would surely have been found, and also had he been sought after January 29, 1907, on which date it appears that the negotiations with the owner of the estate, Emilio Gómez, fell through, the purchaser, Rodríguez Cabrero, could have been found, inasmuch as he did not leave the Island and had his habitual residence in the town of San Sebastián.

But they went to look for him *a few hours before* the expiration of the term of 90 days allowed by the law for redemption, and even during those last pressing moments they did not seek him in his residence, but only looked for him in his store and in the streets of the town.

Is this sufficient to show due diligence? Not at all; the time was woefully lost, and now the blame is thrown on Rodríguez Cabrero because he was not round in the town where he lives a few hours before the expiration of the term when, to look for him diligently and to comply with the provisions of the law by making the proper tender of money, the municipality of Mayagüez had had at least 89 days.

Then, when Rodríguez Cabrero was found and the money was tendered him, the term had expired, and it is evident that for this reason he should then refuse to accept it.

Thereupon the municipality of Mayagüez deposits the sum in the registry of property of said city.

But this deposit is made on April 17, 1907, at 3.30 p. m., and as the judicial sale had been held on January 16, 1907, and the certificate of the award had been delivered to Rodríguez Cabrero on the same date, it is clear that the deposit was made by the municipality of Mayagüez after the expiration of the 90 days referred to in section 348 of the Political Code.

The trial judge and the parties are agreed that the deposit had been made out of the time prescribed by law.

It appears, therefore, that the municipality of Mayagüez could not effect the redemption because it was not the owner of the estate sold, the owner being Emilio Gómez, and the latter had not assigned said right to aforesaid municipality nor had he given it any authority for the purpose.

It also appears that, although by a broad construction, said municipality may be considered as the owner in its capacity as annuitant, it was notably and lamentably negligent and made the deposit in the registry when its right had lapsed through the expiration of the term which the law allows in such cases.

There is, moreover, an error in the judgment appealed from to which attention should be called, and it is the following:

The judgment appealed from annuls the deed assigning the right to redeem, executed by Emilio Gómez and his wife, Clotilde E. de Gómez, in favor of Angel Franco, dated February 9, 1907, because it had been made, it is alleged, in fraud of the right of the San Antonio Hospital, the annuitant.

But as a matter of fact, Angel Franco has not been made a defendant here and he would be prejudiced by the judgment appealed from without having been heard or defeated in these proceedings.

For further elucidation, a new hearing was had before the court in banc, not only to permit counsel to make their respective arguments but to explain a point which arose in the discussion of the court, namely, whether the certificate of sale issued in favor of Manuel Rodríguez Cabrero carries with it the cancellation of the annuity which is the ground for the representation of the *ayuntamiento* of Mayagüez in these proceedings.

This court, after having heard counsel for the parties, considered section 315 of the Political Code which provides, among other particulars, as follows:

"The tax that is assessed against each piece or parcel of real property, including any improvements that may be thereon, or that may be subsequently placed there, shall constitute the first lien thereon, and shall be prior to all other liens whatsoever on said property, whether the said liens attach before or after the lien of said taxes."

This local statute leads us to the conclusion that Manuel Rodríguez Cabrero, who acquired at public sale for arrears of taxes the estate subject to the annuity, is entitled to have it delivered to him free from encumbrances, in accordance with the provisions of said section and section 125 of the Mortgage Law, and, consequently, that the certificate of sale entails in this case the cancellation of the annuity, which is the cause for the intervention of the municipality of Mayagüez in these proceedings.

It was insinuated by counsel for the respondent, at the second hearing, that if the annuity were canceled, the Constitution of the United States would thereby be violated.

This is not so, because even on the assumption that said Constitution were applicable to Porto Rico with all its amendments, nothing is there in the record to convince us that a due process of law has been absent here.

The municipality of Mayagüez has been sued and has had a full defense and the proper trial.

It is idle to allege here that a contractual obligation has been violated.

Strictly speaking, it is only in one State where this is prohibited, but whenever a person takes possession of an estate he must fully understand that the Government has the right, if it wishes, to collect its taxes first.

Under the circumstances, it is impossible to uphold the judgment appealed from, of April 28, 1908, and it should be reversed, with the dismissal of the complaint and all the prayers thereof, without any special taxation of costs.

*Reversed.*

Chief Justice Hernández and Justices MacLeary, Wolf and del Toro concurred.